UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-22302-CIV-ZLOCH

CREATIVE HOSPITALITY VENTURES, INC.,
et al.,

    Plaintiffs,

vs.                                              **O R D E R**

UNITED STATES LIABILITY INSURANCE
COMPANY d/b/a UNITED STATES
LIABILITY INSURANCE GROUP, et al.,

    Defendants.
_____/

    THIS MATTER is before the Court upon Defendant Essex Insurance Company's Motion For Summary Judgment (DE 24)[1] and all briefing filed in relation thereto.  The Court has carefully reviewed said Motion, the entire court file and is otherwise fully advised in the premises.

I. Background

    Plaintiff E.T. Limited Inc. is a merchant that processes credit cards and has been sued for alleged violations of the Fair and Accurate Credit Card Transaction Act ("FACTA"), 15 U.S.C. § 1681c(g)(1).  Plaintiff E.T. Limited was sued by its customer, Eric Chavoustie, in Chavoustie v. E.T. Limited, Inc., Case No. 08-20099 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.  In that action, Mr. Chavoustie alleged that E.T. Limited, Inc. violated FACTA when its restaurant issued

---

[1] By prior Order (DE 83) the Court denied Defendant Essex Insurance Company, Inc.'s Motion To Dismiss (DE 24) and pursuant to agreement of the Parties, converted it into Defendant Essex Insurance Company's Motion For Summary Judgment.

him an electronically printed receipt revealing more than the last five digits of his credit card number and/or the card's expiration date. By his Complaint, Mr. Chavoustie sought to represent a class of similarly situated cardholders whose credit card information had likewise been printed on a receipt provided to them by E.T. Limited.

The statute Mr. Chavoustie sought relief under, FACTA, 15 U.S.C. § 1681c(g), states that except as otherwise provided by the statute, "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1)[2]. The statute imposes liability for both willful and negligent violations of the FACTA. Section 1681n provides that willful violators of the FACTA are liable as follows:

> (a) In general [a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of- (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000;... (2) such amount of punitive damages as the court may allow; and (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

---

[2] This subsection of the statute is limited in that the truncation requirement only applies to receipts that are electronically printed and does not apply to transactions "in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card." 15 U.S.C. § 1681c(g)(2).

15 U.S.C. § 1681n. And Section 1681o provides that negligent violators of the FACTA are liable as follows:

> (a) In general [a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of - (1) any actual damages sustained by the consumer as a result of the failure; and (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681o.

The Chavousite Complaint alleged violations of 15 U.S.C. § 1681c(g), but did not specify whether the plaintiff sought a finding of liability for willful noncompliance pursuant to section 1681n or a finding of liability for negligent noncompliance pursuant to section 1681o.

E.T. Limited, Inc. requested that its insurance company, Essex Insurance Company (hereinafter "Essex"), defend and indemnify it in the lawsuit filed by Chavoustie, but Essex denied coverage. Essex claimed, and continues to claim in this litigation, that the insurance policy it issued to E.T. Limited does not provide coverage based on the allegations contained in the Chavousite Complaint. Consequently, E.T. Limited joined this lawsuit with other plaintiffs seeking a declaratory judgment against their respective insurers that the insurance companies are bound by the policies they issued to the plaintiffs to defend and indemnify them against FACTA lawsuits.

Defendant Essex is the only Defendant remaining in this litigation after the claims against Defendant Zurich North American Insurance Company were voluntarily dismissed (See DE Nos. 45 & 50) and the Court granted Defendant United States Liability Insurance Company's Motion to Dismiss (DE 18) upon the Recommendation (DE 65) of Magistrate Judge Rosenbaum. See DE 68. A status conference was held on October 14, 2009, wherein the remaining Parties agreed that Defendant Essex Insurance Company, Inc.'s Motion To Dismiss (DE 24) would be converted into a Motion For Summary Judgment because the legal issues presented are more appropriately addressed by summary judgment. The Court set a schedule for the Parties to brief issues raised at the status conference concerning the Motion for Summary Judgment. Said briefing is complete and this matter is now ripe for the Court's consideration.

## II. Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c)(2); see also Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quotation omitted).

The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving party has the burden of proof.  Celotex Corp., Id. at 322; Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987).  Further, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Because the Court's jurisdiction over this matter is premised upon diversity, specifically 28 U.S.C. § 1332(d)(2), the Court applies the substantive law of Florida, the forum state.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).  Florida law requires the application of the rule of lex loci contractus, which in the context of insurance contracts, provides that "the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage."  Rando v. Gov't Emps. Ins. Co., 556 F.3d 1173, 1176 (11th Cir. 2009)(quoting State Farm Mut. Auto. Ins. Co. v. Roach, 945 So. 2d 1160, 1163 (Fla. 2006)).  The Parties agree that Florida law applies to interpret the insurance contract at issue. Accordingly, the Court applies Florida law to the instant case.

Here the only issue in dispute is the proper interpretation of the insurance policy Essex Insurance Company issued to E.T.

5

Limited, Inc. and whether the language of the policy affords coverage for the particular loss claimed.  Under Florida law, the interpretation of provisions of an insurance policy is a question of law properly decided on summary judgment.  See James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008); Dahl-Eimers v. Mutual of Omaha Life Ins. Co., 986 F.2d 1379, 1381 (11th Cir. 1993).

### III. Analysis

As an initial matter, the Court must address Defendant Essex Insurance Company's argument in support of its Motion For Summary Judgment that E.T. Limited lacks standing to pursue its claims against Essex.  Defendant argues that there are no pending claims against E.T. Limited for alleged FACTA violations and, consequently, E.T. Limited's claim for defense and indemnification is without a factual or legal basis.  See DE 79, p. 5.  This argument is based on the fact that the Chavoustie Complaint was dismissed and no amended complaint was filed within the time allotted by the state circuit court.

Defendant's argument on this point ignores the fact that E.T. Limited had to defend itself in the underlying state court action.  This defense necessarily involved costs and attorney's fees.  The controversy remains live because upon a finding of a duty to defend, Essex would be liable to E.T. Limited for the costs associated with its defense in the Chavoustie case.  See e.g. MCO Envtl., Inc. v. Agric. Excess & Surplus Ins. Co., 689 So.2d 1114, 1115 n.1. (Fla. Dist. Ct. App. 1997).  By bearing the cost of its

6

own defense, E.T. Limited suffered an injury in fact that is concrete and actual.  There is a causal connection between this alleged injury that is fairly traceable to defendant's challenged action of denying insurance coverage.  Plaintiff's injury would be redressed by a favorable decision in this action, declaring that coverage exists under the subject policy for the allegations contained in the Chavoustie Complaint and that Defendant is liable for damages arising out of its refusal to defend Plaintiff in the Chavoustie lawsuit.  Consequently, ET. Limited has standing to pursue its claims and this Court's jurisdiction over the matter is proper.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Having found that standing exists, the Court now turns its analysis to the insurance policy at issue.  This analysis must begin by recognizing the basic legal principle in Florida that the "scope and extent of insurance coverage is defined by the language and terms of the policy."  Siegle v. Progressive Consumers Ins. Co., 788 So.2d 355, 359 (Fla. Dist. Ct. App. 2001).  And it is well settled in Florida that "an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." Jones v. Florida Ins. Guar. Ass'n, Inc.  908 So.2d 435, 442-43 (Fla. 2005).

Whether or not a duty to defend exists must be determined based solely on the allegations in the underlying complaint.  Id. at 443.  Further, "[t]he duty to defend is of greater breadth than

7

the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless." Id. And where there is any doubt regarding the duty to defend, this doubt must be resolved in favor of the insured. Id. Additionally, if the complaint "alleges facts showing two or more grounds for liability, one being within the insurance coverage and the other not, the insurer is obligated to defend the entire suit." Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So.2d 810, 813-14 (Fla. Dist. Ct. App. 1985). Accordingly, the Court must review the insurance policy language and the underlying state court complaint (the Chavoustie Complaint) to determine if the allegations contained within the Chavoustie Complaint trigger Essex's duty to defend E.T. Limited under its insurance policy.

First the Court looks to the language of the insurance policy to determine if it is clear and unambiguous. Under Florida law, "insurance contracts must be construed in accordance with the plain language of the policy [and] if the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous." Sphinx Intern., Inc. v. National Union Fire Ins. Co. Of Pittsburgh, Pa., 412 F.3d 1224, 1227-28 (11th Cir. 2005)(quoting Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla. 2003) (internal citations omitted). Ambiguities are "construed in favor of the insured and strictly against the drafter." Id. at 1228 (quoting Swire Pac. Holdings, 845 So.2d at 165.). Yet courts should not "strain to find

ambiguity," and are required to "consider the plain meaning of the terms in an insurance contract, even if a term is not defined in the policy." <u>Sphinx Intern., Inc.</u>, at 1228-29.

Essex's insurance policy provides that it "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." DE 47-2, p. 22. The policy further provides, however, that the insurance company will have no duty to defend the insured against "any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply..." <u>Id.</u> The policy states that "'personal and advertising injury' means injury including consequential 'bodily injury,' arising out of one or more of the following offenses:..." <u>Id.</u> at p. 30. The policy then lists several covered offenses. The only one pertinent to the instant matter is found in subparagraph (e): "Oral or written publication, in any manner, of material that violates a person's right of privacy..." <u>Id.</u> Plaintiff contends that Defendant is required to defend it in the Chavoustie matter based on this subparagraph. But Defendant counters that the facts alleged in the Chavoustie Complaint, namely that the insured violated FACTA by printing a credit card receipt bearing the card's expiration date and/or more than the last five digits of the card number and handing it to the cardholder, do not involve "publication" as contemplated by the policy. Notably, the insurance policy does not define "publication."

9

Although failing to define a term does not create ambiguity per se, by failing to define a term in the policy, or to include qualifying or exclusionary language, the insurer cannot take the position that there should be a "narrow, restrictive interpretation of the coverage provided."  State Farm Fire and Cas. Co. v. CTC Development Corp., 720 So.2d 1072, 1076 (Fla. 1998) (quotation omitted); Dahl-Eimers, 986 F.2d at 1382 (quotation omitted).  With this framework in mind, the Court must evaluate whether the term "publication" as used in the insurance policy at issue is ambiguous.

Under the ordinary rules of contract construction, the Court first assesses the natural or plain meaning of the policy language at issue while striving to give meaning to every provision.  See Dahl-Eimers, 986 F.2d at 1382.  The Court is guided in its analysis by Penzer v. Transp. Ins. Co., 29 So.3d 1000 (Fla. 2010).  In Penzer, the United States Court of Appeals for the Eleventh Circuit certified the following question to the Supreme Court of Florida:

> Does a commercial Liability Policy Which Provides Coverage for "Advertising Injury," Defined as "Injury Arising out of...Oral or Written Publication of Material That Violates a Person's Right of Privacy," Such as the Policy Described Here, Provide Coverage for Damages for Violation of a Law Prohibiting Using Any Telephone Facsimile Machine To Send Unsolicited Advertisement to a Telephone Facsimile Machine When No Private Information is Revealed in the Facsimile?

Penzer, 29 So.3d at 1002 (quoting Penzer v. Transp. Ins. Co., 545 F.3d 1303, 1312 (11th Cir. 2008)).  The Florida Supreme Court answered this question in the affirmative.  In reaching its conclusion that coverage existed, the Court applied a "plain

10

meaning" analysis. The policy language at issue in Penzer was "oral or written publication of material that violates a person's right of privacy." Penzer, 29 So.3d at 1003. This language is almost identical to the language at issue in the case against Essex which is, "oral or written publication, in any manner, of material that violates a person's right of privacy." DE 47-2, p. 30. The only difference between the language at issue in Penzer and the language at issue here is that the Essex policy adds the phrase "in any manner" after the word "publication."

The first step the Supreme Court of Florida employed to discern the plain meaning of the phrase at issue in Penzer was to "consult references that are commonly relied upon to supply the accepted meaning of the words." Penzer, 29 So.3d at 1005 (internal quotation omitted). In regards to the term "publication," the Court stated as follows:

> The first term, "publication" is defined as "communication (as of news or information) to the public: public announcement" or as "the act or process of issuing copies (as a book, photograph, or musical score) for general distribution to the public." The definition also refers the reader to the definition of "publish." To publish is "to place before the public (as through a mass medium): DISSEMINATE."

Penzer, 29 So.3d at 1005-06 (quoting Webster's Third New International Dictionary 1836 (1981)). The Court applied this definition to the facts of Penzer and found that sending 24,000 facsimile advertisements was included in the broad definition of "publication" because it "constitutes a communication of information disseminated to the public and it is the act or process of issuing

copies...for general distribution to the public." Id. at 1006.

Next, the Penzer Court addressed the phrase "right of privacy," which is also found in the Essex policy, and found that "the plain meaning of 'right of privacy' is the legal claim one may make for privacy, which is to be gleaned from federal or Florida law, rather than by a dictionary." Id. The Court found that the source of the right to privacy as applied to the facts of Penzer was the TCPA, and that it provided the privacy right to seclusion.

The definitions embraced by the Florida Supreme Court in Penzer are applicable to the instant case against Essex. Here, the source of the right to privacy is the FACTA, a federal statute which endeavors to protect consumer privacy. See Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1306 (11th Cir. 2009). This statute could be recognized to protect a secrecy interest rather than the privacy right to seclusion recognized in Penzer. Thus, the Chavoustie Complaint can fairly be read to allege a violation of a right of privacy, by alleging E.T. Limited violated the FACTA.

Next, the Court evaluates the word "publication," as used in the Essex insurance policy. Based on the plain meaning of "publication" adopted by the Florida Supreme Court in Penzer, the Chavoustie Complaint does not allege "publication" ever occurred. The Complaint alleges only that E.T. Limited "printed more than the last five digits of the Payment Card's account number or the Payment Card's expiration date on a receipt provided to the Cardholder." DE 47-4. Printing a non-truncated credit card receipt and providing it to the cardholder does not constitute publication because there

is no dissemination of information to the public.  See Penzer, 29 So.3d at 1006.  Although the Essex policy includes the phrase "in any manner" after the word "publication," this does not change the plain meaning of the word.  The phrase "in any manner" clarifies the scope of publication by directing what categories of publication are covered by the policy.  If the Chavoustie Complaint alleged anything that could be considered "publication," it would be covered by the policy based on the addition of the phrase "in any manner."  However, the Chavoustie Complaint does not allege anything that could be deemed "publication."

The Court recognizes that Penzer dealt with the term "publication" in the context of an advertising injury, but is not persuaded that a different definition would apply in this case where "publication" appears under Essex's policy definition for "personal and advertising" injury.  E.T. Limited has offered no reasonable alternative definition for "publication" in the context of personal injury such that the Court could conclude the term, as used in the Essex policy, is ambiguous.  An insurance policy is only considered ambiguous if the relevant policy language is susceptible to more than one reasonable interpretation where one interpretation would provide coverage and the other would limit coverage.  Sphinx Intern., Inc., 412 F.3d at 1227-28 (quotations omitted).  E.T. Limited has failed to show that there is any reasonable interpretation of the term "publication" that would provide coverage in this matter.  And "if there is no genuine ambiguity, there is no reason to bypass the policy's plain meaning."  Id. at 1228.

13

The Court notes that even if it were to apply tort law principles, which do not control judicial construction of insurance contracts, the Chavoustie Complaint still fails to allege anything that could be deemed "publication." See Prudential Prop. and Cas. Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla. 1993). Defamation, for example, requires transmission of defamatory information to some third-party for publication to have occurred. See Restatement (Second) of Torts § 577 (1977). Here, there is no allegation that any FACTA-violating receipt was provided to anyone other than the cardholder.

Essex's duty to defend is determined solely from the allegations contained in the underlying complaint and inferences that can be made from the allegations in the complaint are not sufficient to trigger the duty to defend. Fun Spree Vacations, Inc. v. Orion Ins. Co., 659 So.2d 419, 421 (Fla. Dist. Ct. App. 1995). The Chavoustie Complaint does not allege facts to suggest E.T. Limited might be liable for injury arising out of "publication, in any manner." And, therefore, the allegations in the Chavoustie Complaint fail to trigger Essex Insurance Company's duty to defend its insured, E.T. Limited, in that matter. Further, because there is no duty to defend, there is no duty to indemnify. WellCare of Florida, Inc. V. American Intern. Specialty Lines Ins., 16 So.3d 904, 906 (Fla. Dist. Ct. App. 2009). Having found the insurance policy at issue does not provide coverage for the allegations in the Chavoustie complaint, the Court need not address Defendant's other arguments regarding the applicability of policy exclusions to the

same allegations.

## IV. Conclusion

After comparing the allegations in the Chavoustie Complaint with the insurance policy at issue, the Court finds that the Chavoustie complaint fails to allege facts that "fairly and potentially" bring the legal action within policy coverage. See Jones, 908 So.2d at 444. Thus, Essex is not liable for damages arising from its refusal to defend E.T. Limited in the Chavoustie action, because no duty to defend exists under the subject policy for the allegations contained in the Chavoustie Complaint.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant Essex Insurance Company's Motion For Summary Judgment (DE 24) be and the same is hereby **GRANTED**;

2. All pending Motions be and the same are hereby **DENIED** as moot; and

3. Final Judgment will be entered by separate Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this ___23rd___ day of March, 2011.

WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

All Counsel of Record