# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 03, 2011

FILED by _____ D.C.
NOV 08 2011
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA – MIAMI

Steven M. Larimore
United States District Court
400 N MIAMI AVE
MIAMI, FL 33128-1807

Appeal Number: 11-11781-FF
Case Style: E.T. Limited, Inc. v. Essex Insurance Company
District Court Docket No: 1:08-cv-22302-WJZ

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Carol R. Lewis
Phone #: (404) 335-6179

Enclosure(s)

MDT-1 Letter Issuing Mandate

UNITED STATES COURT OF APPEALS
For the Eleventh Circuit

_____

No. 11-11781
_____

District Court Docket No.
1:08-cv-22302-WJZ

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 30, 2011
JOHN LEY
CLERK

CREATIVE HOSPITALITY VENTURES, INC.,

   Plaintiffs, et al.,

E.T. LIMITED, INC.,

   Plaintiff-Appellant,

versus

UNITED STATES LIABILITY INSURANCE COMPANY,
d.b.a. United States Liability Insurance Group, et al.,

   Defendants,

ESSEX INSURANCE COMPANY,

   Defendant - Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered: September 30, 2011
For the Court: John Ley, Clerk of Court
By: Jeff R. Patch

Issued as Mandate:
November 03, 2011

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

```
                                    FILED
                            U.S. COURT OF APPEALS
    No. 11-11781              ELEVENTH CIRCUIT
  Non-Argument Calendar       SEPTEMBER 30, 2011
                                   JOHN LEY
                                    CLERK
```

D.C. Docket No. 1:08-cv-22302-WJZ

CREATIVE HOSPITALITY VENTURES, INC.,

                                                                                                        Plaintiffs, et al.,

E.T. LIMITED, INC.,

                                                                                                        Plaintiff-Appellant,

versus

UNITED STATES LIABILITY INSURANCE COMPANY,
d.b.a. United States Liability Insurance Group, et al.,

                                                                                                        Defendants,

ESSEX INSURANCE COMPANY,

                                                                                                    Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Florida

(September 30, 2011)

Before HULL, WILSON, and BLACK, Circuit Judges.

PER CURIAM:

Plaintiff appellant E.T. Limited, Inc., ("ETL") appeals the district court's grant of summary judgment to Defendant–appellee Essex Insurance Company ("Essex"). The district court concluded that Defendant Essex's commercial general liability policy (the "Policy") imposed no duty to defend Plaintiff ETL in the underlying litigation in state court. In the state court litigation, several consumers filed a class action against ETL and others for violating the Fair and Accurate Credit Card Transaction Act ("FACTA"), 15 U.S.C. § 1681c(g)(1), by issuing receipts revealing more than five digits of the consumer's credit card number or the card's expiration date.[1]

More specifically, the district court concluded that Defendant Essex owed no duty to defend Plaintiff ETL under the Policy because ETL's issuance of a credit card receipt does not constitute a "publication" as required under the Policy's coverage for personal and advertising injury. We agree with the district court that "publication" as used in the Policy is unambiguous and that the

---

[1] Enacted as an amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681, FACTA requires a merchant to truncate the credit or debit card number on a customer's receipt. FACTA provides, "Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1).

2

provision of a receipt to a customer involves no "publication" within the meaning of the Policy. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Policy

Plaintiff ETL operates a restaurant in Miami, Florida. During 2008, ETL was the named insured on the Policy issued by Defendant Essex. The Policy covers sums ETL must pay because of "advertising injury," defined as follows:

> **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> **1. Insuring Agreement**
>
> > a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right to defend the insured against any "suit" seeking those damages. . . .
>
> . . . .
>
> **2. Exclusions**
>
> This insurance does not apply to:
>
> > **a. Knowing Violation Of Rights Of Another**
> > "Personal and advertising injury" caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

3

. . . .

### SECTION V - DEFINITIONS

. . . .

14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

. . . .

>    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

>    e. Oral or written publication, in any manner, of material that violates a person's right of privacy . . . .

**B. Underlying State Court Litigation**

In February 2008, ETL was sued in state court in Florida. In state court, the class action complaint alleges violations of FACTA and seeks to recover on behalf of "all persons who . . . had more than the last five digits of their payment card's account number or expiration date printed on the receipt provided to the Cardholder." The complaint alleges that ETL "willfully violated [FACTA] and failed to protect the Cardholder and the purported class against identity theft and credit and debit card fraud by printing more than the last five digits of the card number and/or the expiration date on the consumer receipts it provided to the

4

Cardholder and the purported class." The complaint seeks actual damages or statutory damages,[2] and punitive damages, costs, and attorney's fees.

ETL requested that Essex defend and indemnify ETL in this state court litigation, but Essex denied coverage. Although our record contains no evidence of the disposition of the state court litigation, the parties apparently agree that the state court case was dismissed in April 2009.

## B. Federal Court Litigation

Initially, this federal court case was brought by another insured party, as a prospective class action, on behalf of all persons and entities that have been sued under FACTA and were denied insurance coverage by United States Liability Insurance Company ("USLI") "or other insurance companies." The complaint sought declaratory judgments that the insurers were obligated to defend and indemnify their insureds against lawsuits asserting violations of FACTA.

An October 2008 amended complaint added ETL as a prospective class plaintiff and added Essex as a defendant. Moving to dismiss the complaint, Essex argued, among other things, that it owed no duty to defend ETL because the

---

[2] The statute permits a consumer injured by a person who "willfully fails to comply" with FACTA to recover "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000." See 15 U.S.C. § 1681n(a). A consumer injured by "negligent noncompliance" with FACTA may recover only actual damages. See 15 U.S.C. § 1681o.

printing of a credit card receipt involved no "publication" within the meaning of the Policy. USLI also moved to dismiss on similar grounds. After ordering supplemental briefing on the defendants' motions to dismiss, the district court referred the motions to the magistrate judge.

In a lengthy report and recommendation, the magistrate judge concluded that the underlying state court complaint against Essex "can fairly be read to include both negligent and willful noncompliance" with FACTA, but that the underlying complaint against USLI alleged only willful noncompliance with FACTA. Turning to interpretation of the insurance policies at issue here, the magistrate judge concluded that the phrase "publication, in any manner" was broad enough to include the provision to a customer of a credit card receipt containing more than five digits of the credit card number or the card's expiration date. The magistrate judge further concluded that FACTA created a "right to privacy" within the meaning of the insurance policies and that the underlying complaints therefore alleged "injury" as defined by the policies.

Addressing the pertinent exclusions, the magistrate judge concluded that, because the underlying state court complaint against USLI sought damages only for willful violations of FACTA, the exclusion for "knowing violations of rights of another" precluded coverage. However, because the underlying state court

6

complaint against Essex fairly included allegations of both willful and negligent violations of FACTA, this exclusion did not justify Essex's denial of coverage. Accordingly, the magistrate judge recommended dismissal of the claims against USLI but recommended denial of Essex's motion to dismiss.

Timely objecting to the magistrate judge's report, Essex argued that the magistrate judge erred by concluding that the underlying state court complaint against ETL alleged both negligent and willful violations of FACTA and by concluding that the provision of a receipt constituted a "publication" within the meaning of the Policy. Neither the plaintiffs nor USLI objected to the magistrate judge's report. Accordingly, the district court adopted the report with respect to the claims against USLI and granted USLI's motion to dismiss. However, the district court reserved ruling on Essex's motion to dismiss and Essex's objections to the magistrate judge's report.

At a subsequent status conference, the parties informed the district court that the underlying state court case against ETL had been dismissed, and the parties agreed to convert Essex's motion to dismiss into a motion for summary judgment. The district court ordered further briefing and subsequently denied Essex's motion to dismiss and converted the motion to dismiss into a motion for summary judgment.

Following further briefing, the district court granted summary judgment to Essex. The district court concluded that "publication" as used in the Policy was not ambiguous and that the term did not cover the FACTA violations alleged in the underlying state court complaint. The district court noted that the Florida Supreme Court recently defined "publication" as "communication (as of news or information) to the public: public announcement." See Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1005 (Fla. 2010) (internal quotation marks omitted). Relying on this definition, the district court concluded that "[p]rinting a non-truncated credit card receipt and providing it to the cardholder does not constitute publication because there is no dissemination of information to the public." The district court acknowledged that the Policy included the phrase "publication, in any manner," but concluded that the modifying phrase merely clarified the categories of publication covered by the Policy. Because the underlying state court complaint alleged no "publication" at all, Essex properly denied coverage and had no duty to defend ETL in the underlying state court case. ETL[3] timely appealed the district court's order.

---

[3]The notice of appeal is from the district court's March 23, 2011 order, which addresses only ETL's claims against Essex. Although the notice of appeal references Creative Hospitality Ventures, Inc. as the appellant, it is clear that the intent of the notice of appeal is to appeal the claims in the district court's March 23, 2011 order. Thus, we construe the notice of appeal to include ETL as the plaintiff appellant. See Fed. R. App. P. 3(c)(4).

## II. DISCUSSION

On appeal, Plaintiff ETL argues that the district court erred by granting summary judgment based on a narrow construction of "publication, in any manner" as used in the Policy. Although acknowledging the Florida Supreme Court's definition of "publication" in Penzer, ETL notes that the policy at issue in Penzer did not include the modifying phrase "in any manner." ETL contends that this modifying phrase broadens the scope of "publication" to include a written credit card receipt. ETL further argues that "publication" is not defined in the Policy and is ambiguous, as evidenced by the fact that the magistrate judge and the district court reached differing conclusions about the scope of the term. Because the term is ambiguous, ETL asserts that the Policy must be construed against Essex and that Essex therefore breached the Policy by denying a defense to ETL in the underlying state court case.

### A. Insurance Policy Interpretation Under Florida[4] Law

"Under Florida law, insurance contracts are construed according to their plain meaning." Garcia v. Fed. Ins. Co., 969 So. 2d 288, 291 (Fla. 2007)

---

[4] In this diversity case, we apply the substantive law, including the choice-of-law rules, of the forum state, in this case Florida. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 1021 (1941). The parties agree that Florida's choice-of-law rules require the application of Florida law to this insurance dispute.

(quotation marks omitted). Nevertheless, if the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is ambiguous. Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). An ambiguity in an insurance contract is interpreted against the insurer and in favor of the insured. Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003). Before construing a provision against the insurer, however, the provision must actually be ambiguous. Garcia, 969 So. 2d at 291.

In determining the plain meaning of provisions in an insurance policy, Florida courts may consult references commonly relied upon to supply the accepted meaning of words. Id. at 292. A provision is not rendered ambiguous merely because it is complex or requires analysis. Swire Pac. Holdings, 845 So. 2d at 165. The "mere failure to provide a definition for a term involving coverage does not necessarily render the term ambiguous." Cont'l Cas. Co. v. Wendt, 205 F.3d 1258, 1262 (11th Cir. 2000) (quotation marks omitted). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." Garcia, 969 So. 2d at 291 (quotation marks omitted).

## B. Defining "Publication"

In this appeal, we must decide whether "publication" as used in the Policy includes a merchant's provision of a receipt to a customer during a retail transaction. Fortunately, our review is aided by the Florida Supreme Court's recent decision in Penzer.

In Penzer, an insured sued his commercial general liability ("CGL") insurer in federal district court, seeking a declaratory judgment that the insurer was obligated to defend an action against the insured for violating the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by sending unsolicited facsimile advertisements.[5] 29 So. 3d at 1003. In Penzer, the policy provided coverage for personal or advertising injury, which included injury arising out of "[o]ral or written publication of material that violates a person's right to privacy." Id. The district court concluded that this provision was unambiguous and that the insurer owed no duty to defend the TCPA claims because coverage arose only if the content of the published material (in this case, the faxed advertisements)

---

[5] The TCPA prohibits the use of "any telephone facsimile machine . . . to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C).

violated a person's right to privacy. Id. at 1004. The insured appealed, and we certified the following question to the Florida Supreme Court:

> DOES A COMMERCIAL LIABILITY POLICY WHICH PROVIDES COVERAGE FOR "ADVERTISING INJURY," DEFINED AS "INJURY ARISING OUT OF . . . ORAL OR WRITTEN PUBLICATION OF MATERIAL THAT VIOLATES A PERSON'S RIGHT OF PRIVACY," SUCH AS THE POLICY DESCRIBED HERE, PROVIDE COVERAGE FOR DAMAGES FOR VIOLATION OF A LAW PROHIBITING USING ANY TELEPHONE FACSIMILE MACHINE TO SEND UNSOLICITED ADVERTISEMENT TO A TELEPHONE FACSIMILE MACHINE WHEN NO PRIVATE INFORMATION IS REVEALED IN THE FACSIMILE?

See Penzer v. Transp. Ins. Co., 545 F.3d 1303, 1312 (11th Cir. 2008) (alteration in original).

Responding in the affirmative to the certified question, the Florida Supreme Court (in a five-justice majority) held that the policy language was unambiguous and provided coverage "for blast-faxing in violation of the TCPA." Penzer, 29 So. 3d at 1008. Importantly, for our purposes, the Florida Supreme Court majority adopted a plain-meaning, dictionary definition of "publication" as used in the CGL policy in Penzer:

> The . . . term[] "publication" is defined as "communication (as of news or information) to the public: public announcement" or as "the act or process of issuing copies (as a book, photograph, or musical score) for general distribution to the public." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1836 (1981). The definition also refers the reader to the definition of "publish." Id. To publish is "to place before

12

> the public (as through a mass medium): DISSEMINATE." <u>Id.</u> at 1837. Here, sending 24,000 unsolicited blast-facsimile advertisements to Mr. Penzer and others is included in the broad definition of "publication" because it constitutes a communication of information disseminated to the public and it is "the act or process of issuing copies . . . for general distribution to the public."

<u>Id.</u> at 1005-06.[6]

### C. Is Providing a Receipt to a Customer "Publication, in Any Manner"?

We agree with the district court that the provision of a receipt to a customer fails to constitute a "publication" within the meaning of Essex's Policy. In particular, we reject ETL's argument that the language of "publication, in any manner" is ambiguous, and we apply the dictionary definition of "publication" as used by the Florida Supreme Court in <u>Penzer</u>. Specifically, "publication" means

---

[6]Although two of the seven Florida justices wrote separate concurrences and would have decided that the policy provision was ambiguous, only one concurring justice concluded that "publication" was ambiguous. See <u>Penzer</u>, 29 So. 3d at 1008-10 (Pariente and Canady, J.J., concurring only in the result). However, Justice Canady—who concluded that "publication" might be ambiguous—found that the "right to privacy" language in the policy was ambiguous because it reasonably could be construed to cover either an invasion of privacy caused by the <u>content</u> of the published material or an invasion of privacy caused by the act of sending the facsimile (in other words, a violation of the right to seclusion, or to be left alone). Justice Canady argued that "publication" may refer to either dissemination of information or to the "process of producing and issuing printed or reproduced matter, a definition which focuses on the physical object <u>disseminated</u>." <u>Id.</u> at 1010 (emphasis added). But in defining the scope of the right to privacy under the policy language, even Justice Canady assumed that "publication" required some <u>dissemination</u>—a matter that was not in dispute in <u>Penzer</u> because the insured had "disseminated" 24,000 unsolicited advertisements by facsimile. See <u>id.</u> at 1007 (majority opinion). In any event, Justice Canady's distinction between content-based and seclusion-based violations is irrelevant to this particular case because the district court concluded that the FACTA violations at issue constituted a violation of a person's right to privacy.

13

"communication (as of news or information) to the public: public announcement" or "the act or process of issuing copies . . . for general distribution to the public." Penzer, 29 So. 3d at 1005-06 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1836 (1981)).

In this case, ETL allegedly violated FACTA by issuing a credit card receipt to a customer that contained more than five digits of the consumer's credit card number or the card's expiration date. The receipt is a contemporaneous record of a private transaction between ETL and the customer, and ETL neither broadcasted nor disseminated the receipt or the credit card information to the general public. Indeed, ETL provided the receipt only to the customer (who already knows the credit card number and its expiration date). Additionally, unlike the unsolicited "blast-faxes" at issue in Penzer, the aggrieved customer initiated the transaction by paying for his meal with a credit card. In sum, providing a customer a contemporaneous record of a retail transaction involves no dissemination of information to the general public and does not constitute publication within the meaning of Essex's Policy. See Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am., 581 F. Supp. 2d 677, 697, 706 (W.D. Pa. 2008) (concluding, under Pennsylvania law, that FACTA violations were not covered under a CGL policy covering advertising injury; the issuance of a receipt involved no "publication"

because "the printed receipts are not made generally known, publicly announced, nor dissminated to the public").

Although ETL argues that "publication" must be ambiguous because the magistrate judge and the district court reached differing conclusions on the scope of the term, we note that the magistrate judge issued her report before the Florida Supreme Court's decision in Penzer and therefore lacked the benefit of the Florida Supreme Court's binding, plain-meaning definition of the term. We likewise reject ETL's argument that the phrase "in any manner" expands the definition of "publication" to include the provision of a written receipt. As the district court noted, the phrase "in any manner" merely expands the categories of publication (such as e-mail, handwritten letters, and, perhaps, "blast-faxes") covered by the Policy. But the phrase cannot change the plain meaning of the underlying term "publication."

**AFFIRMED.**[7]

---

[7] ETL's request for oral argument is **DENIED.**

A True Copy - Attested
Clerk, U.S. Court of Appeals,
Eleventh Circuit

By _____
Deputy Clerk
Atlanta, Georgia

15